NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIDGET DENNIN,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN POST, et al.,<br><br>    Defendants. | No. 22cv901 (EP) (JRA)<br><br>**OPINION** |

**Evelyn Padin, U.S.D.J.**

Plaintiff Bridget Dennin was injured at Mountainside Stables ("Mountainside") in Lafayette, New Jersey when a piece of plywood fell from a barn doorway and startled the horse she was riding. Plaintiff sued: (1) Mountainside owner John Post, who owns Co-Defendants Cofrancesco Farms, Inc. and Pequest Road, LLC[1] (collectively the "Owner"); (2) Joseph Aulisi, who leased Mountainside from the Owner (the "Lessee"); and (3) Plaintiff's riding instructor Nicole Kapusta, who subleased Mountainside from Aulisi (the "Instructor"). Defendants all move to dismiss the Complaint. Plaintiff opposes. For the reasons below, the Court will deny the motions and permit discovery to proceed.

**I.    BACKGROUND[2]**

On July 21, 2021, Plaintiff, a New York resident, was in a riding lesson taught by the Instructor at Mountainside. D.E. 1 ("Compl.") ¶ 11. Plaintiff rode past the barn doors of an indoor

---

[1] According to the Owner, the correct entities are Post, Pequest Road, LLC, and Peter J. Cofrancesco, Inc. D.E. 7.
[2] For the purposes of this Opinion, the Court accepts as true all of the Complaint's well-pled factual allegations.

arena with "a panel of plywood affixed or otherwise leaning against the interior of the barn doorway." *Id.* ¶ 12. The plywood "suddenly, and unexpectedly, fell to the ground in close proximity to [Plaintiff's] horse," startling the horse and causing Plaintiff to be thrown from her mount. *Id.* ¶ 13. The Complaint alleges that Plaintiff's injuries were caused by Defendants' negligence and/or failure to warn about the plywood. *Id.* ¶¶ 13-16.[3]

The Lessee and Instructor each move to dismiss pursuant to Federal Rule 12(b)(6). They argue that substantive New Jersey law, specifically the Equine Activities Act (the "Equine Act"), N.J.S.A. 5:15-2, *et seq.*, requires dismissal. D.E.s 5, 10. The Owner joins the Lessee's motion.[4] D.E. 7. Plaintiff opposes. D.E. 11. Only the Lessee filed a reply. D.E. 12.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. However, the allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Id.*

---

[3] Plaintiff's negligence claim is Count One. Count Two incorporates those allegations and names various John Does and XYZ Corporations.

[4] The Owner's "motion" is a one-page request to join the Lessee's motion. D.E. 7. Because the Equine Act defines an "operator" as a "person or entity who *owns, manages, controls or directs* the operation of an area where individuals engage in equine animal activities," N.J.S.A. 5:15-2, they stand in the same shoes. In other words, absent any other argument by the Owner, the Owner's fate is tied to the Lessee's arguments.

2

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  As the moving party, the defendant bears the burden of showing that no claim has been stated.  *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011).  For the purposes of the motion, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff.  *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

### III.    ANALYSIS

As a threshold matter, the Lessee and Instructor each argue that the Equine Act is the applicable, substantive state tort law.  Lessee Br. 8; Instructor Br. 8.  Plaintiff agrees, Opp'n 11, and so does this Court, for the reasons argued in the briefs.  Utilizing the Third Circuit's three-part test in *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011), the Court finds that there is no conflict between federal law and the Equine Act, that the Equine Act is outcome-determinative, and that there is no countervailing federal interest preventing the Equine Act's application.  The Equine Act applies; whether it requires dismissal is another matter.

In passing the Equine Act, the New Jersey State Legislature intended to "limit claims by participants[] by defining those risks that the facility operator cannot effectively eliminate and that the participant assumes, and by precluding any recovery for an injury resulting from any of those assumed risks."  *Hubner v. Spring Valley Equestrian Ctr.*, 203 N.J. 184, 196 (2010).

The Equine Act has an "expansive scope."  *Id.*  For example, it provides a non-exhaustive list of inherent risks, defined as "dangers which are an integral part of equine animal activity":

> a. The propensity of an equine animal to behave in ways that result in injury, harm, or death to nearby persons;
> b. The unpredictability of an equine animal's reaction to such phenomena as sounds, sudden movement and unfamiliar objects, persons or other animals;
> c. Certain natural hazards, such as surface or subsurface ground conditions;

3

> d. Collisions with other equine animals or with objects; and
> e. The potential of a participant to act in a negligent manner that may contribute to injury to the participant or others, including but not limited to failing to maintain control over the equine animal or not acting within the participant's ability.

N.J.S.A. § 5:15-2.

The Equine Act further provides that participants assume those risks together with

> all other inherent conditions, including weather conditions, conditions of trails, riding rings, training tracks, [and] equestrians. Each participant is assumed to know the range of his ability and it shall be the duty of each participant to conduct himself within the limits of such ability to maintain control of his equine animal and to refrain from acting in a manner which may cause or contribute to the injury of himself or others, loss or damage to person or property, or death which results from participation in an equine animal activity.

N.J.S.A. § 5:15-3.

A participant's "assumption of risk…shall be a complete bar of suit and shall serve as a complete defense to a suit against an operator by a participant for injuries resulting from the assumed risks," notwithstanding traditional comparative negligence principles.  N.J.S.A. § 5:15-5.

But the protections for operators barring suit, while broad, are not limitless.  The Equine Act's exceptions "create circumstances in which a facility's operator may be liable for a participant's injury." *Hubner*, 203 N.J. at 197 (citing N.J.S.A. 5:15–9).  Plaintiff alleges three relevant exceptions:

> a. Knowingly providing equipment or tack that is faulty to the extent that it causes or contributes to injury. …
> c. A case in which the participant is injured or killed by a known dangerous latent condition on property owned or controlled by the equine animal activity operator and for which warning signs have not been posted; [and]
> d. An act or omission on the part of the operator that constitutes negligent disregard for the participant's safety, which act or omission causes the injury.

4

Opp'n at 17, *et seq.* (citing N.J.S.A. 5:15–9).

Plaintiff argues that the falling plywood could constitute faulty "equipment or tack." This can be rejected outright; though the Equine Act defines neither "equipment" nor "tack," "tack" generally encompasses items like saddles and bridles, while horse riding "equipment" includes riding helmets. *See e.g., Hubner*, 203 N.J. at 192 (mounting block and cavaletti were "simply an ordinary part of the equipment in the riding ring"); *Stoffels v. Harmony Hill Farm*, 389 N.J. Super. 207, 213, 912 A.2d 184, 188 (App. Div. 2006) (bridle, snaffle bit, and reins); *Dilley v. Holiday Acres Properties, Inc.*, 905 F.3d 508 (7th Cir. 2018) (stirrups); *Fishman v. GRBR, Inc.*, 2017 MT 245, 403 P.3d 660 (Mont. 2017) (saddle cinch). Neither includes infrastructural elements like gates or fence posts, and certainly not plywood without any relationship to the act of horse riding. *Cornett v. Red Stone Group, Inc.*, 41 N.E.3d 155 (Ohio Ct. App. 2d Dist. Montgomery County 2015) (defective gate through which horses escaped did not fall within meaning of "faulty or defective equipment or tack"). Likewise, as the Lessee argues in reply, the Complaint does not allege that any Defendant had knowledge of the defective plywood.

Plaintiff finds more success, however, with the negligence exception. Plaintiff argues that discovery and a complete record could determine "whether Plaintiff's injuries were caused by an inherent risk or whether the horse's reaction to the falling panel of plywood was out of the norm." DE 11 at 17.

To harmonize the Equine Act's broad assumption-of-risk protections for operators with the Act's exceptions, the New Jersey Supreme Court examined the Act's legislative history in *Hubner*. The Act, the Court found, was the third in a series of statutes[5] aimed at allocating responsibility for "injuries sustained in inherently dangerous recreational activities." *Id.* at 198-99. The impetus

---

[5] The other two were the Ski and Roller Skating Rink Acts.

for the statutes was a Vermont Supreme Court decision which "rejected a ski area operator's assertion the suit by a novice skier, who was injured by falling over brush growing on a beginner ski trail, was barred" by the assumption-of-risk doctrine. *Id.* at 199 (citing legislative history discussing *Sunday v. Stratton Corp.*, 136 Vt. 293 (1978)). *Sunday* held, as relevant here, that the assumption of risk doctrine could not bar suit if the injury was caused by the "condition of the field" rather than by the "playing of the sport" itself.

*Sunday* relied upon an older New Jersey Supreme Court decision, *Meistrich v. Casino Arena Attractions, Inc.,* 31 N.J. 44 (1959). *Meistrich* likewise separated assumption-of-risk claims into two categories: "primary," relating to a known or obvious inherent risk imposing no operator duty; and "secondary," where the operator has a duty, breached that duty, but asserts as an affirmative defense that a plaintiff "voluntarily exposed himself to a risk negligently created by the master." *Hubner*, 203 N.J. at 197-98 (citing *Meistrich*, 31 N.J. at 50).

*Hubner*'s upshot: the Equine Act, like the Ski and Roller Skating Rink Acts, adheres to *Meistrich's* "primary" and "secondary" framework. *Hubner*, 203 N.J. at 202-03. Phrased another way, the statutes "protect operators…from liability by maintaining an assumption of risk defense against injuries resulting from inherent conditions of the activity or the facility, *while at the same time ensuring that operators manage the facility in a reasonable manner*." *Id.* (emphasis added). "[N]otwithstanding the many and varied inherent risks of equine activities, the operator of the facility owes the participants certain ordinary duties of care, defined through the statute's expression of exceptions to the bar on claims for injuries resulting from any of the assumed risks." *Id.* at 204.

Thus, the *Hubner* plaintiff did not state a claim where cavaletti[6] were used to simulate going over a log on a trail—an inherent riding risk.  203 N.J. at 189.  Conversely, to state a claim, "the participant must demonstrate that the injury arose not because of one of the inherent dangers of the sport, but because the facility's operator breached one of the duties it owes to the participant, as defined in the statute's exceptions."  *Id.* at 206; *see also* Bruce Mandeville, *Equine Liability Statutes: Are the Courts Moving in the Wrong Direction?*, 12 J. Animal & Nat. Resource L. 159, 195 (2016) ("[A]ny actions within the defendant's control cannot be classified as an inherent risk.")  This finds support in the Equine Act's text: each exception involves action (or inaction) within the operator's control.  N.J.S.A. 5:15-9.

*Hubner* includes two dueling hypotheticals illustrating the difference:

> [I]f the operator permits the facility to fall into disrepair and a participant is injured because the door of a stall falls off of its rusted hinges onto him or her, the exception would apply because the operator has acted with negligent disregard by breaching its ordinary duty to make the premises reasonably safe. On the other hand, if the horse is frightened by a loud noise and runs head-long into the stall door, injuring the participant, the claim will be barred because the behavior of the horse, an assumed risk, was the cause.

203 N.J. at 206-07.

But what happens when the negligence *causes* the loud noise?  According to the Complaint, "[P]laintiff rode past the barn doors of the indoor riding arena [when] the aforesaid panel of plywood suddenly, and unexpectedly, fell to the ground in close proximity to the horse which plaintiff was riding at the time, causing it to be 'startled,' whereupon the plaintiff was thrown from her mount, sustaining serious bodily injury."  Compl. ¶ 13.

While Plaintiff's allegation differs slightly from *Hubner's* hypothetical because the plywood did not fall *on* Plaintiff, they remain materially similar: Plaintiff alleges that the

---

[6] Small X-posts with a pole suspended between them.

7

*operator*'s inaction—either failing to maintain the barn/plywood or failure to warn about its condition—was the most important link in the causal chain ending in Plaintiff's injuries. Plaintiff alleges, in other words, that the cause of her injuries was an "event[] or condition[]…within the control of, and thus…part of the ordinary obligations of, the facility's operator." Thus, at least at this juncture, Plaintiff has stated a plausible claim falling within the Equine Act's exceptions meriting further exploration in discovery. *Kane v. Stables*, No. A-3568-14T3, 2016 WL 1723842, at *3 (N.J. Super. Ct. App. Div. May 2, 2016) (reversing dismissal where plaintiff alleged improper supervision and found the "fundament of a cause of action."). To the extent that the Complaint alleges that all Defendants were allegedly responsible for the plywood, or failure to warn about it, dismissal is not warranted.

## IV.   CONCLUSION

For the reasons above, Defendants' motions to dismiss (D.E.s 5, 7, and 10) are DENIED. An appropriate order follows.

Dated: September 13, 2022

_____
Evelyn Padin, U.S.D.J.